UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:19CR00151 DPM |
| | ) | |
| SAIWON BROWN | ) | |

## UNITED STATES' MOTION FOR UPWARD VARIANCE AND SENTENCING MEMORANDUM

The United States of America, by and through Jonathan D. Ross, United States Attorney for the Eastern District of Arkansas, and Stephanie Mazzanti, Assistant United States Attorney, moves this Court to sentence the defendant Saiwon Brown to a term of imprisonment of 180 months, and submits this sentencing memorandum for the Court's consideration.

The Guideline range for Counts 1 and 10 is 51 to 63 months' imprisonment, with an additional 60 months' imprisonment that must run consecutive to the sentences imposed for Counts 1 and 10. Brown's extremely violent conduct, the nature of his drug trafficking activities, and the extensive use and possession of firearms by Brown warrant an upward variance in this case. The gang violence engaged in by Brown and his associates terrorized this community. Such conduct must be deterred, and the sentence must protect society from the danger posed by Brown.

The factual basis for the offenses of conviction is described in the Presentence Report (PSR) paragraphs 6-13, and in the Plea Agreement in paragraph 5H.  Some of Brown's personal history and characteristics are described in PSR paragraphs 35-50, as well as the way Brown described himself and his actions in his interviews with law enforcement.  As discussed below, while the need for just punishment merits a significant sentence of imprisonment considering Brown's conduct, specific and general deterrence also warrant an upward variance in Mr. Brown's case.

The United States submits Government's Exhibits 1, 2, 2a, 3, 3a, 4, 4a, 5, 5a, 6, 7, 8, 9, 10, 11, 11b, and 11f under seal, as unindicted individuals are identified or depicted therein. Government's Exhibits 6a, 7a, 8a, 11a, 11c through 11e are videos filed conventionally with the Court. Government's Exhibits 8b, 9a and 12 are filed electronically for the Court's consideration.

**I.      Brown's Violent Conduct and Drug Trafficking**

Law enforcement's investigation of the Bloods gang, specifically the South Side Piru gang subset that referred to itself as 187NoMercy, reached a necessary climax October 1, 2018, when Brown and two of his gang members fired pistols at a car driven by a 64-year-old woman in the middle of the day in a residential area in Little Rock. She had no connection to Brown or criminal conduct – she had previously lived in the neighborhood and was simply driving through reminiscing.

At the time of this shooting, the citizens of Little Rock had been plagued by gang rivalry shootings, including shootings perpetrated by Brown. The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) had an ongoing firearm and drug trafficking investigation of the South Side Piru sect of the Blood street gang, with Brown as a primary target.

On October 1, 2018, at approximately 2:30 p.m., a Little Rock Police Department (LRPD) detective observed defendant Saiwon Brown walking in an alley toward 33rd Street holding a handgun, accompanied by two other individuals who also possessed handguns. Once shots were fired, police responded to the area. The victim, a 64-year-old woman, advised dispatch that several black males began shooting at her in her vehicle, which was hit by gunfire, on 33rd Street. Brown and others were taken into custody and transported to the Major Crimes Division for questioning; firearms and drugs were recovered from Brown's residence, which was also the residence from which the shooters came and to which the shooters retreated following the shooting.

Thereafter, Little Rock Police Department Detectives Harper and Williams, along with ATF Special Agent (SA) O'Connor, conducted a recorded interview of Brown. *See* Government's Exhibits 2 and 2a. Brown acknowledged that the individuals with him shot at the 64-year-old woman's vehicle on October 1, 2018, and he admitted possessing a firearm and providing a firearm used by one of the other individuals to shoot at the car, but denied firing the weapon he was holding.

During that interview, Brown told law enforcement, that the shooting occurred because it was believed that the occupant of the Jeep was "Scooter the Shooter" (identified as Roshon Maxwell, currently under indictment in the Eastern District of Arkansas), and he was "beefing with Scooter over the whole John Barrow" and over the killing of Mashon Jackson by Brown. Brown and Jackson were previously involved in gang-related retaliatory shootings. On January 8, 2017, Jackson and others came to Brown's residence and fired shots, and Brown shot and killed Jackson during this shootout.

Post-*Miranda*, on October 1, 2018, Brown made various admissions, as set forth in the report of interview, including his admission to engaging in the distribution of large quantities of marijuana from March 2017 through January 2018. *See* Government's Exhibit 1. Brown also admitted to carrying firearms during all of the narcotics transactions at various hotels in Little Rock. Brown admitted supplying other members of the South Side Piru street gang with marijuana for distribution. He also admitted to trading marijuana for firearms on several occasions. During the course of the interview, Brown provided information about others engaged in illegal activity.

Brown stated, "Everybody hate [Wuda]," referring to himself (Wuda) and the gang rivalries and shootings that had occurred in the recent past. Brown admitted that he had "shot at"

3

"Flocka" from Hangar Hill/East End a few times in the past, and specifically admitted getting into a shootout with him at Gino's. Brown acknowledged his involvement in other shootings.

The shooting incident Brown referred to with "Flocka" occurred on May 1, 2018, at 8000 Geyer Springs Road. *See* PSR ¶ 36, regarding LRPD Incident 2018-051335. The business located at this address is a combination gas station and convenience store, and includes a pizza business named Gino's. It is located immediately below Interstate 30 and across the street from the headquarters of the Arkansas State Police building.

On this occasion, Brown saw a person known as Flocka at the business at which each had stopped, accompanied by companions. Brown had shot a gun at Flocka in the past, and the two engaged in a shootout in the parking lot of this business on May 1, 2018. Brown explained that he had gotten out of the car in which he had been riding to enter the business, but had left his pistol in the car. When he saw Flocka, he returned to his car, obtained his pistol, and the shootout began. Flocka and his companions exchanged fire with Brown and his companions. Cars were struck by gunfire, but no humans were struck before both sides fled.

Officers responded to the shots fired call. Upon arrival, LRPD observed several shell casings on the ground and secured the scene. A silver Infinity had several bullet holes on the driver's side. The victim advised he observed a black male in an older model maroon Buick engaged in a shooting incident with a black male in a white Impala ("Nano," an associate of Brown, used his mother's white Impala) parked on the south side of the building. Multiple witnesses advised that the suspect in the white Impala initiated the shooting against the suspect in the maroon Buick for an unknown reason.

Another shooting in which Brown was involved, and which he described, occurred at a residential apartment building located at 1201 Hangar Street on September 30, 2018. *See* PSR ¶

4

39; Government's Exhibits 3 and 3a. Brown drove by the occupied apartment building; Brown said he was trying to kill Flocka, who he believed was present, in retaliation for a previous shooting. Brown used two pistols during this attack. A complainant advised a flat black Ford Mustang with a drop top drove around the complex several times firing rounds into the apartment complex at an unknown subject, and subjects from inside the complex shot back. Law enforcement located approximately 36 spent shell casings at the scene—approximately 30 casings on Hanger Street in the roadway and approximately 6 inside the complex. During that shooting incident, Brown admitted he came to the apartment complex and shot one firearm until it was empty, and then shot a second firearm. Brown again discussed "beefing" with other gangs in Little Rock, and that this resulted in the shooting incident on September 30, 2018. He admitted that he was trying to kill Flocka because he believed Flocka killed his friend "Beezy."

On February 26, 2018, LRPD made contact with homeowner Dorothy Stevens on Wakefield Drive. *See* PSR ¶ 35; Little Rock Police Department Incident Report 2018-023826. Ms. Stevens reported that her grandson, Yuhanah Clinkscale, called her residence and told Quinesha Toombs that she needed to leave the residence because Saiwon Brown stated he was going to drive by the residence and shoot the house up again due to an argument between Clinkscale and Brown. Ms. Stevens agreed to stay away from the home that evening, and advised that Brown is the suspect in an earlier case where he shot her house. During an interview with law enforcement, Brown acknowledged that he likely sent someone to shoot at the Wakefield address, although he later denied the Wakefield shooting.

Following his arrest October 1, 2018, Brown was interviewed by law enforcement on October 1, October 2 and October 4, 2018. Three of these interviews were recorded. *See* Government's Exhibits 2, 2a, 3, 3a, 4, 4a. Over the course of these interviews, Brown detailed his

involvement as a leader of the South Side Piru gang, his possession of firearms, his drug trafficking activities, and the involvement of others in criminal activity. Brown admitted that the 1911 and the Springfield 9mm firearms recovered during the search warrant were his. He admitted to trading marijuana for guns, and that he traded about an ounce of marijuana and about $150 for one of them. Brown stated he traded a Smith & Wesson 9mm for the Springfield 9mm. Brown detailed his acquisition of pound quantities of marijuana from multiple sources of supply over an extended period of time. He admitted that he sold it in various quantities—by the gram, by the ounce, and by the quarter pound ("QP" or "cutie"). Brown confirmed that he always carried a firearm when engaged in his drug trafficking activities. Brown confirmed that he supplied distribution quantities of marijuana to other uncharged individuals associated with his gang and identified other individuals to whom he provided gram quantities of marijuana. Brown discussed providing firearms to his associates, and that he traded marijuana for guns at times.

      Brown also talked about the shootings and fighting beginning with the murder of his friend "Beezy" and his fight with a rival. Brown explained how he obtained the Arkansas State Police gun he used to kill Mashon Jackson. Brown explained the shootout he was in at Gino's was with a different firearm, specifically a Super Hawg. Brown made general references to other shootings, and his family's homes being shot at by others. Brown also talked about long guns, including an "AR" that Nano (identified as Ynohtna Carroll)[1] tried to sell him. Brown discussed putting a 50-round drum magazine on a pistol, but cautioned that it would need to be a Glock for that magazine to work right.

---

[1] United States District Judge Brian S. Miller sentenced Ynohtna Carroll to 180 months imprisonment for brandishing the firearm during the course of a carjacking. Case No. 4:19-cr-00125-BSM, Doc. 31.

During the course of the investigation, corroborating evidence of Brown's extensive firearms possession, and the connection between Brown's firearms possession and drug trafficking activities, was recovered. The United States provides a sample of such evidence recovered from Brown's phone. *See* Government's Exhibits 5, 5a, 6, 6a, 7, 7a, 8, 8a, 8b, 9, 9a, 10. Brown has actively engaged in the purchase and resale of firearms for profit, including an attempt to sell a fully automatic firearm. The evidence recovered in this case demonstrates the extent of the involvement of firearms. *See* Government's Exhibit 11, a sample of photographs depicting firearms and cash recovered; Government's Exhibits 11a-11f, a sample of videos depicting Brown's possession of firearms. To foreclose any assertion that these guns were "prop guns" for rap videos, as previously argued, law enforcement identified numerous photographs from Brown's social media depicting firearms with visible serial numbers. *See* Government's Exhibit 12, sample of photographs of firearms with visible serial numbers.

## II.     Statutory Analysis

Statutory considerations for fashioning a sentence are prescribed in Title 18, United States Code, Section 3553(a). Subsection (a)(1) advises the Court to consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Subsection (2) includes four factors:

> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Subsections (4) and (5) refer to the Guidelines and applicable policy statements issued by the Sentencing Commission. These matters are addressed below.

### A. Nature and Circumstances of the Offense

The Superseding Indictment, Plea Agreement and PSR provide some details of Brown's conduct. Taken together with the related criminal conduct described above, the scope and breadth of his criminal conduct is remarkable. The actual conduct by Brown supported charges that could have resulted in a 35-year-mandatory minimum sentence to run consecutive to Count 1 and the substantive marijuana trafficking counts. The United States requests that this Court exercise its discretion and craft a sentence that results in a total term of imprisonment of 15 years, which is reasonable considering all of the factors in 18 U.S.C. § 3553(a).

According to PSR paragraph 47, the defendant graduated Central High School in 2016. Law enforcement reports identify Brown engaged in criminal conduct beginning at least as early as 2017. The fact that the defendant engaged in such wanton violence over the two years following his graduation exacerbates the gravity of his offenses. Rather than using the foundation of that education for good, Brown engaged in wanton acts of violence that put citizens, those involved in criminal conduct of their own, and those who are properly characterized as innocent bystanders, at substantial, tangible risk of death or serious injury.

### B. History and Characteristics

The Guidelines already account for the defendant's lack of criminal history. Further credit is not necessary or appropriate. That the defendant is a first-time offender is remarkable not as a mitigating factor, but just the opposite. The lack of criminal convictions can hardly create a basis for leniency for someone who has admittedly committed this number of violent offenses and firearms-related crimes.

In considering a sentence above the Guidelines range, it is well established that the Court may "weigh the similarity of past offenses to the instant offense, and the possibility that repeated offenses of a similar nature indicate a heightened need for deterrence." *United States v. Jackson*, 740 Fed. Appx. 856, 857 (8th Cir. 2018) (quoting *United States v. Shillingstad*, 632 F.3d 1031, 1037 (8th Cir. 2011)). A district court also "may impose an upward variance based on facts already included in the advisory sentencing guidelines where the advisory guidelines do not fully account for those facts." *United States v. Hammerschmidt*, 881 F.3d 633, 640 (8th Cir. 2018) (quoting *United States v. Fiorito*, 640 F.3d 338, 352 (8th Cir. 2011) (alteration in original); *United States v. Jones*, 509 F.3d 911, 914 (8th Cir. 2007)).

The Eighth Circuit has previously upheld significant upward variances based upon the criminal history of a defendant.[2] Judges in this district have also imposed sentences that constitute upward variances based upon the criminal history of a defendant. *See, e.g., United States v. Mitchell*, 4:18CR00016 KGB (varying upward and imposing sentence of 180 months' imprisonment in marijuana and firearm case with violent conduct); *United States v. Sherrod*,

---

[2] *See, e.g., United States v. Foy*, 617 F.3d 1029, 1033 (8th Cir. 2010) (upholding a sentence of 480 months' imprisonment, an upward variance from an advisory Guidelines sentencing range of 210 to 262 months' imprisonment); *United States v. Hill*, 552 F.3d 686, 688, 692–93 (8th Cir. 2009) (upholding sentence of 51 months' imprisonment to run consecutive to a 174-month sentence being served where advisory Guidelines range was 15-21 months and the court took into account the facts of the case, the impact of the crime on the victim, the need to protect society, the concern that the defendant would repeat his crime, the need for deterrence, and the relative severity of the crime); *United States v. Ruvalcava-Perez*, 561 F.3d 883, 887 (8th Cir. 2009) (upholding upward variance of 48 months' to 210 months' imprisonment based upon prior violent conduct); *United States v. Carey*, 898 F.2d 642, 645–46 (8th Cir. 1990) (affirming upward departure from 15 years' imprisonment to 19 years' imprisonment based upon prior criminal history of defendant, which was not adequately taken into account by his criminal history category); *United States v. Roberson*, 334 Fed. Appx. 787, 789 (8th Cir. 2009) (unpublished) (upholding upward variance from 77-96 months' to the statutory maximum of 120 months' imprisonment based upon a prior violent felony); *United States v. Werst*, 334 Fed. Appx. 779, 780–81 (8th Cir. 2009) (unpublished) (upholding upward variance from 77-96 months' to 144 months' imprisonment based upon impact of the crime on the victims, the use of a firearm, and the criminal history of the defendant).

4:18CR00016 KGB (varying upward and imposing 150 months' imprisonment in marijuana and firearm case with violent conduct).

### C. 18 U.S.C. § 3553(a)(2) Factors

Subsection (A) deals with punishment; (B) addresses deterrence of others; subsection (C) deals with recidivism of the defendant; and subsection (D) considers a defendant's health and avenues for rehabilitation. A sentence of imprisonment above the applicable guideline range is appropriate in this case because punishment and deterrence are the two most significant § 3553 factors in this case.

#### 1. Just Punishment

Subsection (A) asks what sentence is appropriate "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Were the Court to restrict its considerations merely to the offenses of conviction, it might be appropriate to impose a sentence within the applicable guidelines range. That is, conspiracy to distribute marijuana, possession with intent to distribute marijuana, and possession of a firearm in furtherance of those crimes might be adequately accounted for by the properly calculated guidelines range. But that is not the sum total of the conduct appropriate for the Court to consider when imposing sentence.

#### 2. Recidivism and General Deterrence

There is no reason to believe Brown's risk of recidivism is low. According to PSR paragraph 42, the defendant was raised by his parents and his grandmother. He was living with them during the events described in the PSR and above – yet, despite successfully graduating high school, having no known criminal convictions, and a home with family, he engaged in this conduct. Multiple instances of criminal conduct occurred at Brown's family house. When the

Court, considering subsection (C), looks to the defendant standing before it in this case, the demand for specific deterrence of that defendant is strong.

Furthermore, "general deterrence," addressed in subsection (B), is additionally important here. Brown's leadership of others in the gang is clear – it is reflected in the adjustment to offense level reflected in paragraph 5C. It is reflected in his own accounts of his role – encouragement of others, planning, directing, providing both guns and drugs. His conduct is known to others in the city who were his opponents in rival gangs, and to citizens who were at risk in the various shootings. It is appropriate in these circumstances for the Court's sentence of this defendant to also demonstrate to his companions and opponents that the conduct in which he engaged merits – and will receive – a long sentence.

3. **Health and Rehabilitation**.

The PSR reflects that Brown reports some health issues, but there is no indication that these are acutely serious or particularly life-threatening. There is no indication that any of these conditions prevent Brown from performing important life functions for himself. There is no reason to believe that the Bureau of Prisons cannot properly care for him, and his medical history and physical condition do not suggest a lower sentence. In light of the fact that Brown does have a high school diploma but no other technical or vocational training, it is likely that some vocational or technical training available at the BOP could benefit him.

**D. Consecutive Sentences**

Pursuant to *United States v. Gonzales*, 520 U.S. 1, 11 (1997), the "plain language of 18 U.S.C. § 924(c) forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal." Thus, the

United States requests that the Court specifically order that the term of imprisonment in this case run consecutive to each of his pending state cases.

However, the United States notes that, to avoid consecutive sentencing, counsel often delay resolution of a pending state case until after the federal sentencing. Here, Brown has multiple state cases pending. Because the PSR reflects that Brown is currently in federal custody, even if this Court expressly ordered the federal sentence to run consecutive to the yet-to-be-imposed state sentences, assuming convictions result, it appears Brown would serve his federal sentence first. On multiple occasions, the United States has observed state court judges order state sentences to run concurrent with a federal sentence, despite the inclusion of a conviction for an offense under 18 U.S.C. § 924(c). Therefore, in addition to the conduct described above that is not pending, this Court should take the pending criminal conduct into account in fashioning an appropriate sentence.

### III.   Defendant's Arguments

In his sentencing memo (Doc. 76), Brown requests a sentence of 36 months on Counts 1 and 10 and 36 months on Count 11.  The United States notes that such a sentence would be illegal, as the sentence for Count 11 must be at least 60 months' imprisonment to run consecutive to the sentences imposed for Counts 1 and 10.

As one basis for a lenient sentence, Brown argues that he has great potential of being a successful rapper. Brown previously chose to use his rap career to provoke and promote violence and gang retaliation, as well as glorify the use of firearms and drug trafficking. Encouraging such behavior does not meet the goals of sentencing.

Although Brown claims that he is not known as a menace in his community and is not a threat to society's safety, the numerous instances of extreme violence set forth above belie any

such assertion. It is astonishing that Brown's violent conduct has not resulted in more death. An upward variance to 15 years' imprisonment is appropriate.

                                                    Respectfully submitted,

                                                    JONATHAN D. ROSS
                                                    United States Attorney

                                          By STEPHANIE MAZZANTI (2006298)
                                                    Assistant U.S. Attorney
                                                    P.O. Box 1229
                                                    Little Rock, AR  72203
                                                    (501) 340-2600
                                                    Stephanie.Mazzanti@usdoj.gov